IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| JKC Michaels LLC, | ) |
|         Plaintiff, | ) |
|         -vs- | ) Case No. 3:06-cv-54 |
| KTJ Limited Partnership Eighty-Four, a Minnesota Limited Partnership; Oppidan, Inc., a Minnesota Corporation; and JVC Builders, Inc., | ) **ORDER ON KTJ LIMITED PARTNERSHIP EIGHTY-FOUR AND OPPIDAN, INC.'S SUMMARY JUDGMENT MOTION AGAINST PLAINTIFF** |
|         Defendants. | ) |
| KTJ Limited Partnership Eighty-Four, a Minnesota Limited Partnership; Oppidan, Inc., a Minnesota Corporation, | ) |
|         Cross-Claim Plaintiffs, | ) |
|         -vs- | ) |
| JVC Builders, Inc., | ) |
|         Cross-Claim Defendant. | ) |
| JVC Builders, Inc.; and KTJ Limited Partnership Eighty-Four, a Minnesota Limited Partnership; Oppidan, Inc., a Minnesota Corporation, | ) |
|         Third-Party Plaintiffs, | ) |
|         -vs- | ) |
| Asplin Excavating, Inc., a North Dakota Corporation; Braun Intertec Corporation, a Minnesota Corporation; Laney's, Inc., a North Dakota Corporation; and Roers Construction, Inc., a North Dakota Corporation, | ) |
|         Third-Party Defendants. | ) |

## INTRODUCTION

Before the Court is Defendants/Cross-Claim Plaintiffs KTJ Limited Partnership Eighty-Four and Oppidan, Inc.'s summary judgment motion against Plaintiff (Doc. #89).[1]  The parties filed briefs with respect to the motion and presented oral argument on February 17, 2009.  The Court, having considered all of the briefs and documents filed by the parties as well as the arguments presented at the hearing, now issues this memorandum opinion and order.

## SUMMARY OF DECISION

Under the unambiguous terms of the purchase agreement, Plaintiff was required to bring its claims within 18 months of closing.  Because Plaintiff failed to give notice of its claims within the requisite time period, the claims are time-barred and KTJ/Oppidan is entitled to summary judgment.

Further, Plaintiff purchased the property "as is" with all its faults.  The alleged claims in this case pertain to the soil on the property and/or the building's foundation.  Because Plaintiff's claims are precluded under the plain language of the purchase agreement, KTJ/Oppidan is entitled to summary judgment for this additional reason.

Finally, Plaintiff's negligence claim fails as a matter of law because Plaintiff has not identified an independent noncontractual duty that has been breached.  For these reasons, KTJ/Oppidan's summary judgment motion is **GRANTED** in its entirety.

## RELEVANT FACTUAL BACKGROUND

This case arises from alleged construction deficiencies in a building referred to in this

---

[1] Other summary judgment motions are pending; however, it appears JVC Builders is impacted by those motions.  JVC Builders has filed bankruptcy and is protected by the automatic stay under bankruptcy law; therefore, these other motions are deferred at this time.

lawsuit as Michaels Arts & Crafts store in West Fargo, North Dakota. Initially, KTJ Limited Partnership Eighty-Four ("KTJ") owned the property on which the Michaels store was built. Oppidan, Inc. ("Oppidan") is KTJ's general partner. Oppidan is a developer of retail buildings. KTJ/Oppidan intended to construct a building on the property that would be leased to Michaels for operation of a store.

Before construction began, KTJ/Oppidan hired Braun Intertec to perform a geotechnical and soil analysis. The report indicated the soil on the property consisted of mainly "fat clay." It further noted that fat clay has a potential for volume change due to changes in moisture content. The report made several recommendations regarding care that should be taken during construction.

KTJ/Oppidan contracted with JVC Builders, Inc. to construct the building. A representative from Oppidan testified that Braun Intertec's report was provided to JVC Builders. JVC Builders hired subcontractors, Asplin Excavating, Inc., Laney's, Inc., and Roers Construction, Inc., for the work. Construction began in September 2003. Michaels' lease with KTJ/Oppidan commenced on March 3, 2004. Michaels took possession of the building on May 2, 2004.

On May 14, 2004, John Kiefer made an offer to KTJ/Oppidan to purchase the property as an investment. Kiefer has a four-year business degree from Oregon State University. He owns car dealerships in Oregon and Idaho. Around the time Kiefer was purchasing the property in dispute, he also purchased property in Corvallis, Oregon for $1,300,000 for use as a car dealership.

KTJ and Kiefer signed a purchase agreement dated June 11, 2004. The purchase price

for the property and building was $3,400,000. The purchase agreement contains the following disputed provisions:

> REPRESENTATIONS AND WARRANTIES. The parties to this Agreement hereby warrant and represent to each other as follows:
>
> 5.1   Seller's Representations and Warranties
>       Seller hereby represents and warrants to Buyer as follows:
>
> \* \* \*
>
>       (h)   Improvements. All Improvements on the Property have been constructed in a good and workmanlike manner, in conformity with all applicable laws and regulations.
>
> Except with respect to the warranties set forth in the Deed and in Sections 5.1(a) through (h) hereof, Seller has not made any warranty or representation, express or implied, written or oral, concerning the Property, including without limitation, any representations relating to Hazardous Materials.
>
> Subject to any notice from Seller to Buyer of modifications thereto, all representations and warranties of Seller contained herein are intended to and shall remain true and correct as of the Closing and shall survive the delivery of the Deed from Seller to Buyer and continue for a period of eighteen (18) months after Closing and thereafter expire. Any claims by Buyer with respect to any alleged breach of such representations or warranties shall be commenced by written notice to Seller within said eighteen (18) month period or shall be deemed waived by Buyer. . . .
>
> \* \* \*
>
> 5.3   Buyer Accepts Property 'As Is'.
>       (a)   Buyer Acknowledgment. As of the expiration of the Inspection Period, Buyer acknowledges . . .(i) that Buyer has been given a reasonable opportunity to inspect and investigate the Property, all improvements thereon and all aspects relating thereto, either independently or through agents and experts of Buyer's choosing, (ii) that Buyer is acquiring the Property based upon Buyer's own investigation and inspection thereof, and (iii) the provisions of this Section 5.3(a) shall survive Closing and shall not be merged therein.
>
>       Seller and Buyer agree that upon Closing the Property shall be sold and that Buyer shall accept possession of the Property on the Closing Date 'as is, where is, with all faults,' with no right of set-off or

>reduction in the Purchase Price, and that except for the warranties of title contained in the Deed and except for the representations and warranties of Seller set forth in Section 5.1(a) through (h) hereof inclusive, such sale shall be without representation or warranty of any kind, express or implied, including without limitation, warranty of income potential, uses, merchantability or fitness for a particular purpose, and Seller does hereby disclaim and renounce any such representation or warranty. Buyer specifically acknowledges that Buyer is not relying on any representations or warranties of any kind whatsoever, express or implied, from the Seller . . . as to the condition of or as to any matter concerning the Property (except for the warranties specifically set forth in the deed and in Section 5.1(a) through (h) hereof inclusive), including without limitation: (1) the condition or safety of the Property or any Improvements thereon, including, but not limited to, plumbing, sewer, heating and electrical systems, roofing, air conditioning, if any, foundations, soils and geology . . .(3) the habitability or suitability for occupancy of any structure and the quality of its construction . . . (5) whether the Improvements are structurally sound, in good condition, or in compliance with applicable city, county, state or federal statutes, codes or ordinances. Subject only to the limited warranties of title set forth in the deed and the warranties expressly set forth in Sections 5.1(a) through (h) hereof inclusive, Buyer further acknowledges and agrees that it is relying solely on its own inspection and not upon any representations made to it by Seller . . . Any reports, repairs or work required by Buyer are to be the sole responsibility of Buyer and Buyer agrees that there is no obligation on the part of Seller to make any changes, alterations or repair to the Property, and Buyer acknowledges that upon expiration of the Inspection Period, Buyer has completed its due diligence with respect to the Property to its satisfaction.

The purchase agreement also contained an inspection period, as well as the right to terminate the agreement before the last day of the inspection period. On July 2, 2004, KTJ/Oppidan agreed to extend the inspection period until July 15, 2004, giving Kiefer the option to extend it another ten days with proper written notice.

According to Kiefer, before he purchased the property, it had been inspected by the City of West Fargo, it had been inspected by Michaels, it was also appraised by his real estate agent,

5

and he also believed there had been an environmental inspection completed. Kiefer did not, however, hire an engineer or building inspector to look at the property on his behalf during the inspection period. Moreover, Kiefer did not visit the property before the purchase or closing.

The closing occurred in July 2004. Sometime after the closing, Kiefer transferred the property from his name to the name of one of his companies, JKC Michaels LLC.

By letter dated March 8, 2006, Michaels notified Kiefer that the floor was cracked. Kiefer does not know when the cracks first appeared. Kiefer, in relying on a construction photograph, contends a crack in the concrete foundation appeared shortly after it was poured in October 2003. Kiefer also notes the existence of a letter dated November 7, 2003, from the project superintendent of JVC Builders, Inc. to Roers Construction, indicating that "finished work [was] not in conformance to the project requirements in regards to finish and quality control." It is disputed whether the crack noted by Plaintiff in the October 2003 photograph was fixed and/or whether this crack is related to the issues alleged in this lawsuit. The parties also dispute KTJ/Oppidan's involvement in the construction project and their knowledge of alleged defects.

Plaintiff contends the cause of the alleged construction defects giving rise to this lawsuit is that "proper precautions [were] not taken in handling the fatty clay [and it] later swell[ed] causing problems to the building slabs and foundation." Memo at p. 2. Plaintiff has also submitted its experts' opinions:

From Ricky Engebretson and Chester Leverson -

> [T]he floor problems fall into two district and separate areas cracking and heaving.

> We believe that the majority of the floor cracks are coming from shrinkage

>of the concrete during or shortly after placement. The heaving we believe comes: from the ground beneath the concrete slab-on-grade freezing before or after the placement of the concrete and before the building was enclosed and heated; and/or, from water migrating into the building footprint from a trenched sewer line, wetting the expansive clays as the probable causes. . .

From Midwest Testing Laboratory, Inc -
>Based on our visual observations and elevations taken within the building, it is our opinion the floor slab has undergone uplift to varying degree throughout the building. It is further our opinion this uplift has been brought about by swelling of the clay soils below the sand fill.
>>April 2006

>It is our opinion the more likely scenario is the floor has stayed the same or gone up, which would be in keeping with the soil swelling potential we determined in our floor problem investigation, conducted in March 2006.
>>May 2008.

Plaintiff's Amended Complaint alleges three claims against KTJ/Oppidan and JVC Builders.[2] JVC Builders has filed bankruptcy. Thus, JVC Builders is subject to the automatic stay procedures under bankruptcy law. As for the claims not subject to the automatic stay, Plaintiff alleges KTJ/Oppidan breached their contractual promise that all improvements would be constructed in a good and workmanlike manner; breached their warranty that the building was fit for use as a commercial building; and caused the building to be negligently constructed when they breached their duty to construct the building in a good and workmanlike manner.

---

[2] Plaintiff was granted leave to file an Amended Complaint in July 2008. The amendment allowed JKC Michael's LLC to be substituted for John P. Kiefer. When the summary judgment motion was filed and the hearing was held, Plaintiff had not yet filed the Amended Complaint. It, however, makes no difference for purposes of this motion because the claims in the Complaint and Amended Complaint are the same. Plaintiff has since filed an Amended Complaint, identifying JKC Michaels LLC as the proper real party in interest.

## ANALYSIS

KTJ/Oppidan advance several arguments in support of their motion for summary judgment.  KTJ/Oppidan's primary argument is that according to the parties' clear intent in the purchase agreement, the property was sold "as is" with no express or implied warranties; therefore, Plaintiff's claims must be dismissed.  KTJ/Oppidan also argue that even if the "good and workmanlike manner" warranty was not disclaimed, any warranty or contract claim is time-barred because the purchase agreement unambiguously requires that the seller be notified of any such claims within 18 months of closing.  Finally, KTJ/Oppidan argues that if the Court does not grant summary judgment on the contract claim, the negligence claim must be dismissed because there is no distinction between the alleged contract claim and negligence claim.

### 1.     Claims Time-Barred Under Plain Language of Contract

According to the unambiguous language in the purchase agreement, Plaintiff was given 18 months after closing to bring all claims for breach of representation or warranty.  Section 5.1 of the Purchase Agreement provides, in relevant part:

> [A]ll representations and warranties of Seller contained herein are intended to and shall remain true and correct as of the Closing . . . and continue for a period of eighteen (18) months after Closing and thereafter expire.  Any claims by Buyer with respect to any alleged breach of such representations or warranties shall be commenced by written notice to Seller within said eighteen (18) month period or shall be deemed waived by Buyer.

KTJ/Oppidan received notice of the alleged claims on June 5, 2006, when this lawsuit was filed.  Each of the claims are related to whether the building was constructed in a good and workmanlike manner.  More specifically, Plaintiff alleges KTJ/Oppidan breached their contractual promise that all improvements to the property be constructed in a good and workmanlike manner.  Plaintiff also alleges KTJ/Oppidan impliedly warranted that the building

was fit for use as a commercial building and breached that duty. Finally, Plaintiff alleges KTJ/Oppidan caused the building to be negligently constructed when they breached their duty to construct the building in a good and workmanlike manner. Thus, Plaintiff is alleging breach of representation - that is, the building was constructed in a good and workmanlike manner, and breach of warranty of fitness. It is clear Plaintiff's claims are governed by the time requirements in § 5.1 of the purchase agreement.

The closing occurred in July 2004. It is undisputed that Plaintiff did not notify KTJ/Oppidan of any claim before June 5, 2006. Thus, when KTJ/Oppidan were notified of the claims, it was more than 18 months after closing. Plaintiff attempts to circumvent this time requirement by arguing that KTJ/Oppidan knew about the alleged defects, but concealed them or otherwise failed to disclose them. Plaintiff is alleging fraud without having pled such a claim. The law is clear that fraud must be pled with particularity. Owen v. General Motors Corp., 533 F.3d 913, 920 (8th Cir. 2008); N.D.Civ.P. 9(b). To plead a fraud claim with particularity means a plaintiff must identify "the who, what, when, where, and how" of the alleged fraud. Great Plains Trust Co. v. Union Pacific R. Co., 492 F.3d 986, 995 (8th Cir. 2007) (citation omitted). Plaintiff has not pled any of these things. Since Plaintiff has failed to pled fraud, it cannot now argue fraud and deceit in an attempt to avoid summary judgment.

According to the plain language of the purchase agreement, Plaintiff was required to notify KTJ/Oppidan of any claims alleging breach of a representation or warranty within 18 months of the closing. Under the agreement, failure to provide notice within the time requirement constitutes a waiver. Because Plaintiff failed to provide timely notice of its claims, the claims alleged against KTJ/Oppidan are time-barred. KTJ/Oppidan's motion for summary

judgment is **GRANTED**.

### 2.  Property was Sold "As Is"

In addition to the claims being time-barred, Plaintiff purchased the property "as is, where is, with all faults." According to § 9.10 of the purchase agreement, North Dakota law governs this dispute. According to North Dakota law, a contract is to be interpreted to give effect to the mutual intention of the parties as it existed at the time of contracting. N. D. Cent. Code § 9-07-03. Words in a contract that are inconsistent with its nature or with the main intention of the parties are to be rejected. N. D. Cent. Code § 9-07-18.

The construction of a written contract and whether it is ambiguous is a question of law. Super Hooper, Inc. v. Dietrich & Sons, Inc., 347 N.W.2d 152, 154 (N.D. 1984). A question of fact arises only when the parties' intent cannot be determined from the agreement alone. Id. Here, the parties' intent is clear. Kiefer purchased, and accepted, the property "as is, where is, with all faults." He did so in the purchase agreement and, again, by way of a "Buyer's Affidavit and Agreement."

Kiefer acknowledged in the purchase agreement that he was given a reasonable opportunity to inspect the property, that he was acquiring it based upon his own investigation and inspection, and that he was purchasing it "as is." Purchase Agreement § 5.3. He, again, acknowledged in a document entitled "Form of Buyer's Affidavit and Agreement" that he had full access to the property to physically inspect it, to analyze the present and past uses of the property, and to determine fair market value of the property in its "AS IS" condition. Exhibit K to the Purchase Agreement (emphasis in original). Additionally, KTJ/Oppidan sold to Plaintiff all the personal property at the site in its "used and 'as is' condition." Exhibit F to the Purchase

Agreement.

In response, Plaintiff contends the "good and workmanlike manner" provision contained in § 5.1(h) of the purchase agreement conflicts with the "as is" provision. This provision Plaintiff relies on states: "All improvements on the Property have been constructed in a good and workmanlike manner, in conformity with all applicable laws and regulations." Nevertheless, the "as is" provision notes the sale is without representation or warranty of any kind, including, in part, the condition of the "foundations, soils and geology" as well as "the habitability or suitability for occupancy of any structure and the quality of its construction."

A well-accepted rule of contract interpretation is that when a conflict exists between a specific provision and a general provision, the specific provision prevails. Fortis Benefits Ins. Co. v. Hauer, 636 N.W.2d 200, 205 (N.D. 2001). Here, the purchase agreement specifically excludes any warranty with regard to the foundation, soil, geology, or quality of construction. This lawsuit is all about the soil on the property and the alleged failure to take the proper precautions in dealing with "fatty clay" and in pouring the foundation. The Court finds the specific exclusion prevails over the general "good and workmanlike manner" provision Plaintiff relies on. Again, it is apparent from the language in the whole contract that the building along with any personal property was being sold "as is."

Because the parties' intent at the time the purchase agreement was signed is clear, interpretation of the contract is an issue of law. The parties contracted to sell the property "as is"; therefore, this Court finds KTJ/Oppidan is entitled to summary judgment against Plaintiff for this additional reason.

### 3. No Independent Negligence Claim

Plaintiff also contends an independent negligence claim exists. Plaintiff alleges that KTJ/Oppidan, as the developer, had a duty to construct the building in a good and workmanlike manner and breached that duty, causing the building to be "negligently constructed." Plaintiff's negligence claim is the same as the breach of contract claim, except that Plaintiff adds the phrase negligent construction. At the hearing, Plaintiff was unable to articulate a duty it was owed independent of the duties under the contract. Instead, it relied on Carlson Homes v. Messmer, 307 N.W.2d 564 (N.D. 1981), for the proposition that it should be able to proceed both in contract and negligence.

In Carlson Homes, a contractor brought suit against the purchasers of a home for the balance due on the construction contract. 307 N.W.2d at 565. The purchasers counterclaimed, alleging the contractor negligently completed landscaping and did not complete the landscaping in a workmanlike manner. Id. The purchasers bought the lot with the understanding from the contractor that the backyard would be level. Id. At the time of the purchase, only the foundation was completed and the backyard was not yet at the level indicated on the plat. Id. When the purchasers moved into the home, the backyard was still not at the level indicated on the plat. Id. The elevation was eventually brought in accordance with the plat, but in order to maintain the elevation, a retaining wall was necessary to prevent the dirt from washing away. Id. at 565-66.

The district court determined that the landscaping plan failed to properly set out the elevation in view of the drainage ditch and that the contractor's negligence in arranging the levels and elevation made the lot unfit or unmaintainable. Id. at 566. The contractor appealed, arguing there was insufficient evidence of negligence. Id. The North Dakota Supreme Court

affirmed, finding there was sufficient evidence to support the district court's finding that the contractor was negligent in landscaping the backyard. Id.  The Supreme Court noted that the only thing the purchasers could rely on at the time of the transaction was the plans submitted by the contractor, which reflected a relatively level lot.  The Supreme Court concluded the purchasers should be allowed to rely on the contractor's experience and skill to complete the project according to the plans and that the plans will work as designed. Id.

Additionally, in Carlson Homes, the purchasers were allowed to proceed under a warranty theory, alleging the landscaping was done in an unworkmanlike manner, as noted by Plaintiff here.  However, the warranty issue was tried in Carlson Homes with the parties' implied consent and the district court allowed the purchasers to amend their pleadings after trial to conform to the evidence.  Id. at 567.

Several facts distinguish Carlson Homes, which might impact its application to the present case.  First, KTJ/Oppidan did not build the Michaels store.  They hired JVC Builders to do it.  Second, the Michaels store was already built when Plaintiff purchased it.  Thus, Plaintiff in this case, unlike the purchasers in Carlson Homes, had an opportunity to inspect the building before the sale.  Third, the parties in this case have not consented to proceed under both negligence and warranty, but have specifically objected to proceeding in this manner.  Finally, and probably most significant, Carlson Homes was decided before Pioneer Fuels, Inc. v. Montana-Dakota Utilities Co., 474 N.W.2d 706 (N.D. 1991) and Dakota Grain Co., Inc. v. Ehrmantrout, 502 N.W.2d 234 (N.D. 1993), which made clear that there must be conduct independent of the breach of contract before a plaintiff can proceed under both contract and negligence.  Thus, a mere breach of contract or warranty, alone, does not furnish a basis for

liability in tort for negligence.  Id.; see also Doe v. Southwest Grain, 309 F.Supp.2d 1119, 1122-23 (D.N.D. 2004).

Here, the alleged negligence directly relates to the performance of the contract - that is, whether KTJ/Oppidan breached their contractual duty to construct the building in a good and workmanlike manner.  The alleged negligence is also related to Plaintiff's warranty theory in that the building was allegedly not constructed in a good and workmanlike manner; therefore, it is not fit for its intended use as a commercial store.  Simply stated, this case sounds in contract and/or warranty and Plaintiff cannot articulate an independent duty that was breached, which would give rise to a separate and distinct negligence claim.  Accordingly, Plaintiff's negligence claim must be dismissed.  See Olander Contracting Co. v. Gail Wachter Investments, 643 N.W.2d 29, 39 (N.D. 2002) (dismissal of negligence claim proper when no showing of breach of an independent noncontractual duty).

## CONCLUSION

The purchase agreement provided that Plaintiff must give notice of any claims based on breach of a representation or warranty within 18 months of closing.  Because Plaintiff failed to give notice within the requisite time frame, its claims are time-barred and KTJ/Oppidan is entitled to summary judgment.  Additionally, the parties' intent at the time of the purchase is clear.  Plaintiff purchased the property "as is" with all its faults.  Thus, Plaintiff's claims are also barred by the plain language in the purchase agreement.  Finally, Plaintiff has failed to establish an independent noncontractual duty that was breached to support a negligence claim.  Consequently, Plaintiff's negligence claim must be dismissed as a matter of law.

**IT IS SO ORDERED**.  **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated this 13th day of March, 2009.

                                                           */s/* Ralph R. Erickson
                                                           Ralph R. Erickson, District Judge
                                                           United States District Court